|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CRIMINAL ACTION NO. 4:17CR83 |
| § | |
| JERRY LYNN COLEMAN § | |

## AMENDED MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On November 28, 2018, no objections having been timely filed, the undersigned adopted the proposed findings of fact and recommendations of the Magistrate Judge that Defendant Jerry Lynn Coleman's Motion to Suppress be denied (#113). Subsequently, on that same date, Defendant filed a Motion for Leave to File Out of Time Objections (#115) and Objections to the Report and Recommendation (#116). Having considered Defendant's Motion for Leave, and all other relevant pleadings, the Court finds that Defendant's Motion for Leave should be **GRANTED**. As such, the Court hereby enters this Amended Memorandum considering Defendant's Objections.

## RELEVANT BACKGROUND

Defendant seeks to suppress "all items and statements derived from the traffic stop that the Paris Police Department initiated on December 3, 2016" (#39 at p. 1). On October 12, 2018, and continuing on October 15, 2018, the Magistrate Judge held a Hearing on Defendant's Motion, at which Defendant articulated that such evidence should be suppressed because: (1) law enforcement lacked reasonable suspicion to initiate the DWI traffic stop of Defendant's vehicle given that the officer did not observe a traffic violation and failed to corroborate the 911 caller's

information; and (2) Defendant's detention was prolonged longer than necessary because officers had concluded their investigation into Defendant's purported intoxicated driving prior to discovering the contraband plainly viewed in Defendant's vehicle. Following receipt of supplemental briefing, the Magistrate Judge entered a written Report and Recommendation (#93), recommending that the Court deny Defendant's Motion to Suppress (#39).

In sum, the Magistrate Judge concluded that there was reasonable suspicion adequately justifying the traffic stop because the 911 call "contained adequate indicia of reliability to support reasonable suspicion that Defendant was a possible intoxicated driver," and the record sufficiently supported the officer's assertion that he acted upon reasonable suspicion that Defendant was intoxicated (#93 at pp. 19-20). The Magistrate Judge further found that the duration of the traffic stop was not prolonged past what was necessary to dispel the reasonable suspicion giving rise to the stop because law enforcement discovered the contraband in plain view during the course of their investigation and prior to the completion of the requisite checks on Defendant's license and vehicle (#93 at pp. 27-28).

## OBJECTIONS TO REPORT AND RECOMMENDATION

Defendant raises three (3) main arguments or objections to the Magistrate Judge's report: (1) "the 911 caller provided only conclusory details and failed to articulate facts which constituted reasonable suspicion"; (2) "[Lieutenant's] observations failed to establish reasonable suspicion, both standing alone, or combined with the 911 caller's accusations"; and (3) "[t]he record fails to establish that officers were accomplishing legitimate traffic stop tasks during the period of the unrelated plain view search of [Defendant's] vehicle" (#116).

*Reasonable Suspicion: The 911 Call*

Defendant again argues that "[t]he allegations of the 911 caller in the instant case are conclusory and nonspecific," "vague at best," and "lack[] a sufficient explanation for what the 911-caller actually observed," and therefore, "fail to articulate a reasonable suspicion" (#116 at p. 5). Regarding whether the 911 caller's information gave rise to reasonable suspicion for the traffic stop, the Report and Recommendation noted that:

> In the instant case, the 911 caller, identified himself, giving his full name and phone number to the dispatcher . . . . [T]he 911 caller provided "an extraordinary amount of detail in his call." Specifically, the 911 caller provided the ongoing location of the alleged intoxicated driving, the make, model, color, and license plate number of the vehicle [Government's Exhibit No. 3 at 0:38-2:16]. Furthermore, the details of the 911 call demonstrated that the caller was reporting activity that the caller believed constituted ongoing criminal activity; the 911 caller mentions the car being "all over the road" and driving on the left side of the road multiple times.
>
> Only a few minutes after the inception of the 911 call, Lieutenant was able to verify at least certain of the 911 caller's assertions including specifically all of the vehicle information and the location . . . . . Moreover, it is undisputed that police spotted the car and conducted the stop very shortly after receiving the dispatcher's details from the 911 call . . . .
>
> [T]he tip (1) was based on eyewitness knowledge, which "lends significant support to the tip's reliability;" (2) was made simultaneously, which is "especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation;" and (3) was made to 911, which "has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity."

(#93 at pp. 17-20). Upon independent review of the record, the Court finds that Defendant's characterization of the 911 caller's information as conclusory and nonspecific is unfounded. The 911 caller, while following the vehicle, gave an eyewitness account of the vehicle traveling on the wrong side of the road and almost hitting another vehicle, and, based on those facts, averred that he believed the driver was intoxicated.

3

Moreover, the cases cited by Defendant in support of his Objection are not compelling. In the first case cited by Defendant, *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App.—Austin 2005, no pet.), the state appellate court reversed the lower court's denial of the defendant's motion to suppress, finding that the sole piece of evidence relied upon by the state district court in finding reasonable suspicion, *i.e.,* the officer's testimony that the defendant was "following too close", was conclusory and insufficient. The *Ford* case involved no 911 calls, nor did it consider the *Navarette v. California*, 572 U.S. 393 (2014) opinion, referenced by the Magistrate Judge in the Report and Recommendation's analysis. In the second case cited, *State v. Garcia*, 03-14-00048-CR, 2014 WL 4364623, at *3 (Tex. App.—Austin Aug. 28, 2014, no pet.), the appellate court found that the 911 caller's sole assertion that the allegedly intoxicated driver had been swerving, without more, was not sufficient to establish "illegal, dangerous, or intoxicated driving." Notably, the *Garcia* court characterized the matter as a "close case" and found that the "911 caller's report of swerving, without more description or evidence of its range, persistence, or danger, combined with a conclusory allegation of 'possible' intoxication, without more facts underlying that conclusion (either factual or experiential), did not justify the temporary detention of appellee." *Id*. at *4. As discussed *supra*, the 911 caller's information was not a singular allegation of "swerving"; instead, the 911 caller specifically indicated to the 911 operator, in real time—as opposed to the past recollection in *Garcia*—that the driver was traveling on the wrong side of the road and almost hit another vehicle. In addition, the *Garcia* court pointed to other cases more factually akin to the present case, finding reasonable suspicion premised on information provided by a 911 caller, namely, *Brother v. State*, 166 S.W.3d 255, 256 (Tex. Crim. App. 2005) (caller reported driver speeding, tailgating, and weaving across several lanes of

4

traffic); *Hime v. State*, 998 S.W.2d 893, 894-95 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (caller reported driver swerving toward cars as they tried to pass). Defendant's objection is overruled.

*Reasonable Suspicion: Lieutenant's Observations of the Vehicle*

Defendant next asserts that Lieutenant "indicated that he did not observe [Defendant] swerve, weave, or impede traffic, but that he believed [Defendant] was driving 'left of center' and made a wide right turn"; however, Defendant argues that "[he] was driving as one would typically drive on that particular street under the circumstances," and, thus, Lieutenant's "observations did [not] amount to a violation of TEX. TRANSP. CODE [§] 545.060 (failure to maintain a marked lane), nor did they add anything to the reasonable suspicion determination" (#116 at pp. 6-7).

Defendant's argument that Lieutenant's observations did not give rise to a violation of Texas Transportation Code § 545.060 (failure to maintain a marked lane) is irrelevant. Moreover, in this instance, Lieutenant was permitted to rely upon information received from the 911 caller. *See Hime*, 998 S.W.2d at 896 ("an officer may rely upon information received through an informant, rather than on his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. . . . [The 911 caller] described appellant's vehicle, location and criminal actions. When [the officer] confirmed that appellant's vehicle was located where [the 911 caller] indicated and matched the description given, he was justified in initiating an investigative stop.") (internal citations omitted); *see also Brother*, 166 S.W.3d at 257 ("The factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person.") (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). As in the *Hime* case, the 911 caller provided

5

sufficient information regarding the vehicle's make, model, and license plate number, current location(s), as well as the alleged driving on the wrong side of the road, and almost-collision with another vehicle. Lieutenant possessed sufficient corroboration to justify an investigatory stop. Again, Lieutenant testified, and the video demonstrates that with knowledge of the 911 caller's information, Lieutenant observed Defendant's vehicle traveling on the wrong side of the road, make a wide turn, and fail to stop after the lights and sirens were activated on the police cruiser. This collection of circumstances is sufficient to establish reasonable suspicion to effectuate the stop. *See Madison*, 2003 WL 21267070, at *5; *see also Sanchez-Pena*, 336 F.3d at 437-38; *Johnsen*, 2017 WL 504696, at *3. Defendant's objection is overruled.

*Prolonged Detention: The Officers' Traffic Stop Tasks*

Defendant finally argues that Defendant's detention was unreasonably prolonged because "the record does not establish that a warrant check was ongoing" when Lieutenant discovered the contraband—instead, "the back-up officer was already aware that there was a code '38' discovered (an agency code for possession of drugs) prior to conducting a warrant check," thereby "bel[ying] the conclusion that [Lieutenant's] unrelated search of the vehicle occurred during [any warrant check]" (#116 at 7-9). Defendant is mistaken. In considering whether the detention was unduly prolonged, the Report and Recommendation specifically noted that:

> It was *while* Officer was running such checks on Defendant's license that Lieutenant discovered the bag of marijuana in plain view in the floorboard of Defendant's vehicle.

(#93).

The Fifth Circuit has held that actions, such as Lieutenant's "pat down" of the vehicle, taken prior to the completion of routine license checks do not constitute prolonged detention under

6

the second prong in *Terry*. *See United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993) (questioning of defendant while officers wait for results of a computer check did not exceed the scope of the initial detention); *accord United States v. Spence*, 667 F. App'x 446, 447 (5th Cir. 2016) ("While waiting for the results of computer checks, the police can question the subjects of a traffic stop even on subjects unrelated to the purpose of the stop.") (citing *Shabazz*, 993 F.2d at 437); *see also United States v. Andres*, 703 F.3d 828, 833-34 (5th Cir. 2013) ("Brody's question asking where Andres was driving from occurred before Brody had finished dealing with the traffic offenses and did not extend the scope or duration of the stop.").

Defendant does not contest this line of authority (#116 at pp. 7-9); rather, he argues that the officers were already aware of the contraband prior to running the requisite checks on Defendant's license, thereby distinguishing this case from the above-cited authority. However, the video evidence provided to the Court demonstrates that Lieutenant informed the back-up officer that he had a "38," which is the Paris Police Department's shorthand for "narcotics," *after* the back-up officer returned from running the requisite checks. Before Lieutenant approached the vehicle to conduct a "pat down," Lieutenant handed off Defendant's license to the back-up officer to run the requisite checks (Government's Exhibit No. 1, Moss Body 1 at 7:59). Lieutenant thereafter approached Defendant's vehicle and shined his flashlight inside (Government's Exhibit No. 1, Moss Body 1 at 8:12). Lieutenant then asked Defendant and the neighbors about how to restrain the dog (Government's Exhibit No. 1, Moss Body 1 at 8:40), indicating that the dog had to be removed from the vehicle because there was a "big ol' bag of weed in the floorboard" (Government's Exhibit No. 1, Moss Body 1 at 8:59). Lieutenant then directed Defendant to put his hands on the car; when Defendant complied, Lieutenant conducted a pat down search of Defendant's person

7

(Government's Exhibit No. 1, Moss Body 1 at 9:11). While Lieutenant was in the process of conducting the pat down of Defendant's person, the back-up officer returned from conducting the requisite checks on Defendant's license (Government's Exhibit No. 1, Moss Body 1 at 10:27). Lieutenant thereafter advised the back-up officer that he had a "38" (Government's Exhibit No. 1, Moss Body 1 at 13:32). To reiterate, the video evidence demonstrates that Lieutenant had not viewed the drugs on the floorboard prior to handing Defendant's license to the back-up officer for completion of a license check. As supported by the above-enumerated authority, in the circumstances presented herein, such actions, taken prior to the completion of routine license checks, do not constitute prolonged detention under the second prong of *Terry*.[1] In light of the above-cited authority and the record currently before the Court, the Court overrules Defendant's final objection.

## CONCLUSION

After conducting a *de novo* review, the Court concludes that the findings and conclusions of the Magistrate Judge are correct. Accordingly, Defendants' objections are overruled, and the Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this Court. It is **ORDERED** that Defendant Jerry Lynn Coleman's Motion to Suppress (#39) is **DENIED**.

**IT IS SO ORDERED.**

---

[1] As an aside, the record demonstrates that during the course of the officers' DWI investigation, Lieutenant handed Defendant's license to the back-up officer to conduct the requisite checks, and after handing over the license, Lieutenant discovered the contraband in plain view. Lieutenant or the back-up officer never testified that they had ended their DWI investigation prior to finding the contraband, as Defendant suggests. Indeed, the testimony presented at the hearing shows that upon Lieutenant's discovery of the contraband, the investigation evolved from a DWI investigation to a narcotics investigation (#83 at pp. 73-75; #84 at pp. 53-54, 83, 92-93).

SIGNED at Beaumont, Texas, this 30th day of November, 2018.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE